[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE (#111)
The plaintiff, Dorreth Cole, has brought this lawsuit seeking damages for intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful discharge from employment. The Amended Complaint is in nine counts. The defendants, Terrell Moorehouse ("Moorehouse"), Katherine F. Matzkin ("Matzkin") and Yale University move to strike the eight tort counts. Count Five, alleging wrongful discharge from employment, is not affected by the present motion.
 I. BACKGROUND
The Amended Complaint dated December 10, 1999 alleges the following relevant facts. For purposes of this motion to strike, the court must construe these facts in favor of the plaintiff.[1]
Beginning in 1964, the plaintiff was continuously employed by Yale University. On or about February 8, 1999, Yale University appointed Moorehouse to be plaintiff's supervisor.
At a staff meeting on February 16, 1999, Moorehouse informed those present, including plaintiff, of the fact that she had a masters degree. After inquiring of the staff's educational backgrounds she learned that only the plaintiff had a college degree. Moorehouse told the staff that she considered them to be inadequately educated and that they would not "move upward in life."
At a staff meeting on February 24, 1999, Moorehouse "insulted and demeaned" individual staff members, including the plaintiff, in the presence of the group.
On March 2, 1999, Moorehouse requested a list of faculty salaries. Plaintiff gave her own copy of the list to Moorehouse which prompted Moorehouse to demand to know why plaintiff was in possession of the list. Plaintiff told Moorehouse that the list was given to her for use in calculating budgets. Moorehouse then roughly grabbed the document from plaintiff's hands shouting: "Give it to me! You're not the Business Manager!"
On March 4, 1999 when plaintiff gave Moorehouse a copy of a monthly report that she had prepared for her former supervisor and others, Moorehouse responded: "You think you are the business manager?"
On March 8, 1999, Moorehouse conducted a staff meeting in the presence of the Dean and stated to plaintiff and other staff members: "Some of you CT Page 11516 may wish to leave and move on."
On March 15, 1999, Moorehouse pointed a finger at plaintiff's face and stated: "My own accountant in the Med School could do a better job than you. You exaggerate things, and you don't know what you're doing. I can bring her here and she would do a better job than you." When plaintiff began to explain, Moorehouse walked out, stating: "That is Not acceptable."
One hour later, Moorehouse summoned plaintiff to her office and stated: "This is the third time I am going to warn you." She then shouted at plaintiff regarding an overpayment. When plaintiff tried to explain her noninvolvement in the matter, Moorehouse shouted: "You're lying! You made a mess of it!" Thereafter, Moorehouse pointed a finger in plaintiff's face and shouted: "You are getting out of here. Do you here me? If it's the last thing I do, YOU are getting out of here!" Plaintiff, in tears, walked to the door. Moorehouse then lunged at the door, grabbed plaintiff's hand and shouted: "Take your hand off my door!"
As a result of this experience, plaintiff became physically ill, was unable to sleep and the following morning required emergency medical care for extremely elevated blood pressure and emotional distress.
After the incidents on March 15, 1999, plaintiff went on medical leave through the use of her vacation and sick time. On December 8, 1999, Katherine F. Matzkin ("Matzkin"), a supervisor in Yale's human resources department telephoned plaintiff at home and ordered plaintiff to report to her office at Yale.
On December 9, 1999, plaintiff reported to Matzkin's office. Matzkin presented plaintiff with literature concerning leaves without pay. Plaintiff said to Matzkin that she could not afford to be without pay and stated that if she had no other choice, she would return to her regular job on Monday morning, December 13, 1999. Matzkin responded: "You don't want to go back there and face Bromley."
Matzkin then offered, as an alternative to a leave of absence without pay, a six-month temporary job following which the plaintiff would be required to resign. One of the conditions for this temporary job was that the plaintiff withdraw the present lawsuit. When the plaintiff protested, Matzkin said that plaintiff's lawyer was not capable of winning cases and she would lose her case.
 II. CT Page 11517 DISCUSSION
The gist of the defendants' claim is that the facts recited above do not support a cause of action for either intentional infliction of emotional distress or negligent infliction of emotional distress. Before considering this claim as it applies to each of the counts, it is useful to set forth the well established elements of each of these torts.
Intentional Infliction of Emotional Distress
In order to establish a cause of action for intentional infliction of emotional distress, four elements must be alleged: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. DeLaurentis v. NewHaven, 220 Conn. 225, 266-67 (1991). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . ." Mellaly v. Eastman Kodak Co.,42 Conn. Sup. 17, 20 (1991), quoting 1 Restatement (Second) of Torts § 46, comment (d). "Whether the defendants' conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Id., 18.
Negligent Infliction of Emotional Distress
In order to establish a cause of action for negligent infliction of emotional distress, a plaintiff must plead and prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. Montinieri v. Southern New EnglandTelephone Co., 175 Conn. 337, 345 (1978).
Counts One, Two, Eight and Nine
Counts one, two, eight and nine allege intentional infliction of emotional distress by Moorehouse, Yale University and Matzkin. Applying the legal standard recited above, the motion to strike these counts must be granted because the conduct does not reach the threshold of being extreme and outrageous. CT Page 11518
Counts Three and Four
Counts three and four allege negligent infliction of emotional distress by Moorehouse and Yale University. The court finds that the allegations are sufficient and the motion to strike must be denied.
Counts Six and Seven
Counts six and seven allege negligent infliction of emotional distress by Matzkin and Yale University. The motion to strike these counts must be granted because the mere termination of employment, even where it is wrongful, is not by itself enough to sustain a claim for negligent infliction of emotional distress. Parsons v. United Technologies Corp.,243 Conn. 66, 68 (1997). Matzkin provided plaintiff with two options to end her employment relationship with Yale University. Neither of these options were acceptable to the plaintiff. There was nothing, however, so unreasonable about Matzkin's actions that would make them tortious.
 III. CONCLUSION
For the reasons set forth above, the motion to strike is granted as to Counts One, Two, Six, Seven, Eight and Nine, and denied as to Counts Three and Four.
So Ordered at New Haven, Connecticut this 17 day of August, 2001.
Robert J. Devlin, Jr., Judge